## APPEAL OF CAPITAL CITY INVESTMENT COMPANY.

Docket No. 5376.     Decided September 22, 1926.

1. The value of a leasehold at March 1, 1913, determined.
2. In determining the profit on the sale in 1919 of a leasehold acquired prior to March 1, 1913, the value at the basic date should be reduced by the amount of exhaustion taking place between that date and the date of sale.

*Walter E. Barton, Esq.,* for the petitioner.
*Arthur H. Fast, Esq.,* for the Commissioner.

This is a proceeding for the redetermination of a deficiency in income and profits tax for the year 1919 in the amount of $18,382.05. The points in issue are (1) the value of a certain leasehold on March 1, 1913, which was acquired prior thereto, and which was sold on May 28, 1919; (2) whether the value at the basic date should be reduced on account of the exhaustion which took place between March 1, 1913, and the date of sale, which exhaustion it is alleged could neither by the provisions of the law nor the regulations of the Commissioner be deducted from gross income in income-tax returns.

### FINDINGS OF FACT.

1. Prior to dissolution on January 11, 1921, the taxpayer was an Iowa corporation with its principal place of business in Des Moines. Its business was that of renting property to tenants.

2. On December 31, 1896, the taxpayer purchased by assignment from the lessee a certain lease of lots numbers 7 and 8 in Block 12 in Fort Des Moines, now included in and forming a part of the City of Des Moines. The lease commenced on October 1, 1895, and expired on September 30, 1912. The annual rental for the first 10 years was $4,000, and for the last 7 years was $5,000. The lessee was required to pay all public taxes and assessments which should be assessed upon the leased premises during the term of the lease, to construct and keep in repair the sidewalks and street pavements, and to keep in repair and to reconstruct all sewers, curbings, etc., adjacent to said premises. The lease further provided that the lessee should have the privilege of removing all his improvements made on said premises. On December 31, 1896, certain buildings belonging to the lessee were located on said leased premises, which said buildings were also acquired by the taxpayer from the lessee on said date.

3. The consideration paid for the lease and the buildings located on the leased premises was stock of the taxpayer of the par value of $29,500, of which $2,500 was paid for the lease and $27,000 was paid for the buildings.

4. Before the expiration of the lease, to wit, on November 11, 1902, the lessor and the taxpayer extended said lease to September 30, 1927. In consideration of the extension, the taxpayer agreed to pay a rental of $5,000 per annum quarterly from October 1, 1902, until September 30, 1912, and a rental of $6,000 per annum quarterly from October 1, 1912, until September 30, 1927. The other terms and conditions of the original lease were unchanged and were made applicable to the period of extension from October 1, 1912, to September 30, 1927.

5. The buildings upon the leased premises were known as the Meek Block. The location of this block is one-half block north of the intersection of Sixth Avenue and Walnut Street in the City of Des Moines, which, in 1913, was the business center of the city. The site of the Meek Block was generally recognized by real estate men familiar with conditions in Des Moines as the second best business site in the city. The Meek Block, although generally thought of as a unit, consisted of a two-story brick building in the main with a full basement on the Sixth Avenue side; on the west side of the property the building was three stories with basement and there was another building located on Locust Street east of the three-

story building, in a sense independent from the other two. The building on the Sixth Avenue side was 132 feet long and contained six stories, although only four occupants, namely, a bank, one of the best bakeries and restaurants in the city, the largest meat market, and a prominent drug store. The upper floors were rented as offices. The buildings had either been built or extensively remodeled by the lessee or the tenants. They were all good stout buildings in 1913 and in the opinion of the witnesses had a life of from twenty to twenty-five years from March 1, 1913.

6. The taxpayer sold its lease and interest in the buildings on the leased premises to the Equitable Life Insurance Company of Iowa, on May 28, 1919, for $150,000, and assumed taxes in the amount of $3,916.35, leaving a net selling price of $146,083.65.

7. The Commissioner determined a value of the lease, including the taxpayer's interest in the buildings upon the leased premises as of March 1, 1913, of $79,000, from which he deducted $33,857.25 on account of alleged amortization or exhaustion of the leasehold between March 1, 1913, and May 28, 1919. He determined that the amortized value of the leasehold on May 28, 1919, was $45,142.75 and that the profit realized on the sale thereof was $100,940.90. His computation of the profit is shown by the following statement attached to the Commissioner's letter to the taxpayer dated September 23, 1924:

Amount treated as income in previous audit_____ $137,065.65
Less:

    Profit on sale of leasehold reflected in the above\_\_ $137,864.44
    Correct profit on sale of leasehold as computed
      in accordance with the decision of the Com-
      missioner _____ 100,940.90
                                            36,923.54

    Corrected taxable income_____ 100,142.11

The $100,940.90 which the Commissioner found as the profit on the sale of the leasehold was arrived at in the following manner:

Value March 1, 1913_____ $79,000.00
Lease terminated September 30, 1927.
Lease sold May 28, 1919.
Period of time from March 1, 1913, to sale of lease, 75 months.
Amortization of lease per month_____ _____ 452.43
Amortization of lease 75 months_____ 33,857.25

March 1, 1913, value of lease ($79,000.00) less amortization to end of May, 1919 ($33,857.25) results in $45,142.75 March 1, 1913, value of leasehold unexhausted at date of sale.

Selling price _____ $146,083.65
March 1, 1913, value unexhausted at date of sale_____ 45,142.75

    Taxable profit from sale_____ 100,940.90

The Commissioner, after careful examination of all of the evidence of record, has concluded that on March 1, 1913, the expected net earnings from this property over the remaining life of the lease would represent a figure of approximately $175,000. This amount discounted to present worth as at March 1, 1913, by the application of Hoskold's formula (interest on present worth and sinking fund provided for annually at the respective rates of 10% and 4%) produced a figure of approximately $79,000.00. Inasmuch as it is impossible to segregate the value of the improvements from the value of the lease, it is considered fair and equitable to depreciate the improvements over the life of the lease.

8. The value of the taxpayer's lease and interest in the buildings located on the leased premises on March 1, 1913, was $130,000, which was in excess of the cost thereof.

9. For the years 1913, 1914, 1915, and 1916, the taxpayer made no deduction in its income-tax returns for exhaustion or amortization of its leasehold. In each of the years 1917 and 1918, it made a deduction from gross income of $4,264.81 for exhaustion of its leasehold interest, which the Commissioner disallowed.

## OPINION.

SMITH: The Commissioner determined the value of the taxpayer's leasehold interest as of March 1, 1913, to have been $79,000. The taxpayer contends that the value was $238,120.59, of which amount $118,600 was the fair market value of the lease and $119,520.59 the fair market value of the buildings. In support of its claim it has introduced in evidence the depositions of five individuals, citizens and residents of Des Moines, all of whom were acquainted with the property on March 1, 1913. The deponents were all requested to place a value upon the buildings upon the leased premises as of March 1, 1913, and also upon the lease without buildings on the land on the same date.

It does not appear from the record what, if any, buildings were located upon the property at the time the premises were first leased in 1895. The lease provided that the lessee should have the privilege of removing all his improvements made on or to the leased premises at the expiration of the lease. It also provided:

It is further agreed that in case the improvements, now or hereafter made by said Second party upon said premises, are at any time destroyed or made untenable by fire, the lessee hereof, his heirs or assigns, shall have the privilege of terminating this lease at the end of one year from date of said fire, paying during that year the rate of rental provided for in this lease; and he shall have and retain possession of the ground for six months after the date of fire; and the privilege of keeping this lease in force or terminating it as above provided for. At the expiration of said six months, unless he then elects to terminate [sic] this lease, the lessor, his heirs or assigns, shall have full possession of said premises with the right to improve the same, either personally or through another.

Apparently the lessee was not, in case of fire, required to rebuild the structures, if any, upon the premises at the time the lease was first entered into.

There has not been introduced in evidence any information as to the income of the taxpayer from the leasehold premises during any of the years prior to the date of the sale of the lease in 1919. The Board is not able to determine what income the taxpayer could reasonably have expected to receive during the life of the lease on March 1, 1913. The Commissioner has apparently based his March 1, 1913, value of the lease solely upon the expected rentals to be received during the life of the lease from March 1, 1913. Apparently he has not taken into consideration any prospective value of the lease arising from the fact that the site of the leased premises was the second best business location in the City of Des Moines. The testimony of the witnesses as to the value of the leasehold on March 1, 1913, appears to be predicated largely upon this factor. In our opinion the deponents are men well qualified to express an opinion as to the value of the leasehold premises on March 1, 1913.

One of the witnesses was W. E. Tusant, who testified that he had been a general contractor since 1909 in the City of Des Moines. He had been familiar with the Meek Block since 1909. He had made certain repairs and improvements to the leased premises from 1909 to 1915 or 1916. He stated that in his opinion it would have cost on March 1, 1913, $165,826.80 to replace the buildings new and that their sound value on the same date was $142,602.96. This estimate was an estimate simply of the physical valuation of the buildings without reference to any lease whatever.

T. A. Harding testified that he was 74 years old and that he had been engaged in the real estate business in Des Moines for a period of 35 years. He had sold almost all of the downtown business section once or twice and some of these properties three times; he had valued property for the Federal and State Governments frequently and had valued property in the vicinity of the Meek Block for insurance companies. He placed a value on the buildings as of March 1, 1913, of $80,000, and a value on the lease as of that date of $130,000. He further testified that he had an offer of $200,000 from a party to purchase the taxpayer's leasehold interest in 1912 or 1913 but that the taxpayer had rejected the offer. Upon cross-examination he was asked:

Q. Do you remember any of the details of this offer that was made in 1913?

A. I do not, except that the owners wouldn't accept it. I was simply concerned in making the deal and getting paid for it.

Q. The owners wouldn't accept it?

A. No, they wouldn't.

Q. Do you know the exact date when this offer was made?

A. I do not.

Q. Do you know whether it was in 1912 or 1913?

A. It might have been 1912, I have no means of refreshing myself.

Q. You don't know who made the offer?

A. I think it was the Iowa National Bank or some members of the Board of Directors of the Iowa National Bank.

Griff Johnson testified that he was 54 years old, resided in Des Moines, and that he has had charge of the investments of the Equitable Insurance Company of Iowa for 14 years. Prior to that time he was engaged in the mortgage, real estate, loan, and investment business. He has valued real estate in Des Moines. He has been familiar with the Meek Block nearly all of his life. He placed a value on the buildings of $125,000 to $150,000 and a value on the lease of $50,000, separate and apart from the buildings, as of March 1, 1913.

John Gibson testified that he was 55 years old, resided in Des Moines, and that he was president of the United States Bank. He has been acquainted with the Meek Block for 25 years. He valued the property at March 1, 1913, at $25,000 to $150,000, and the lease at $10,000 a year, or $145,000.

B. F. Kauffman testified that he was president of the Bankers Trust Company of Des Moines, and that he has been familiar with the Meek Block for 30 years. In his opinion the value of the buildings on March 1, 1913, was approximately $75,000, and the value of the leasehold $150,000. He further stated that in his opinion the value of the buildings and leasehold together as of March 1, 1913, was not $225,000, the sum of the value placed by him upon the buildings and the leasehold separately, but $200,000.

It will be noted from the foregoing that the March 1, 1913, value placed upon the buildings by the deponents varied from $75,000, in the case of Kauffman, to $150,000 in the case of Johnson and Gibson, and that the March 1, 1913, value of the lease was variously estimated at from $50,000 by Johnson to $150,000 by Kauffman.

Nowhere does the evidence disclose the investment of the taxpayer in the buildings or the March 1, 1913, value of its investment. Neither does the evidence disclose the net income from the lease for any year. One of the witnesses estimated that the leasehold interest, without taking into consideration the buildings, should have produced a net income of $7,000 per year from March 1, 1913, to September 30, 1927, and that a purchaser of the leasehold interest should have looked for a net income of at least $10,000 per year from March 1, 1913. In making such an estimate of value, the deponents did not take into account the speculative value of the lease. Apparently the leasehold interest had a considerable speculative value by reason of the fact that the site upon which the buildings were located was a valuable business site, and further by reason of the fact that appar-

ently the lessor was willing to sell at a reasonable price. Griff Johnson, one of the deponents for the taxpayer, was an officer of the Equitable Life Insurance Company of Iowa, which purchased the taxpayer's leasehold interest in 1919. He testified that the insurance company would not have considered purchasing the leasehold interest unless it could have gotten the fee to the land.

From a careful consideration of the entire record, we are of the opinion that the taxpayer's lease and interest in the buildings on March 1, 1913, had a fair market value of $130,000. The deduction for exhaustion of the leasehold interest for the taxable year should be computed upon the basis of such value.

In making his determination of the profit upon the sale of the leasehold interest the Commissioner deducted from the March 1, 1913, value an amount representing the exhaustion of the value of the leasehold interest from March 1, 1913, to the date of sale. He computed such exhaustion by spreading the March 1, 1913, value ratably over the unexpired term of the lease from March 1, 1913, and took as the amount of the exhaustion such proportion of the March 1, 1913, value as the number of months elapsing from March 1, 1913, to the date of sale bears to the total number of months of the unexpired term of the lease from the basic date. The taxpayer alleges error on the part of the Commissioner in deducting exhaustion in this manner from the March 1, 1913, value as a part of the computation of the profit realized by sale. It claims that for the purpose of ascertaining the loss sustained or gain derived from the sale or other disposition of an asset, section 202 of the Revenue Act of 1918 does not authorize or require the reduction of the cost or fair market value of the assets sold as of March 1, 1913, by an amount representing exhaustion; that is particularly the case where the taxpayer did not take a deduction for exhaustion in its income-tax returns; and more particularly where under the various income-tax acts or under Treasury Decisions promulgated by authority thereof the taxpayer was not permitted to take such deduction. In making such contention it relies upon the decision of the United States Supreme Court in *Doyle* v. *Mitchell Bros. Co.*, 247 U. S. 179, wherein it was held that under the Excise Tax Act of August 5, 1909, the taxpayer was entitled to deduct from gross income the January 1, 1909, value of timber consumed in manufacturing lumber, the sale of which was the source of the gross income.

Section 202 of the Revenue Act of 1918 does not declare that profit upon the sale of an asset shall be determined by deducting from the sale price the March 1, 1913, value. It simply provides, as was pointed out by this Board in *Appeal of Even Realty Co.*, 1 B. T. A. 355, that the March 1, 1913, value is the *basis* for the determination

of whether a gain or loss is derived from the sale of an asset. As was pointed out in that decision, this basis may be reduced by losses sustained in respect of the property and may be increased by improvements made to the property. The taxpayer contends, however, that such cases are not the taxpayer's case; that there is no legal assumption that the value of the leasehold as of March 1, 1913, suffered a decline between that date and the date of sale as the result of exhaustion; and that since for years prior to 1917 the taxpayer was not permitted under the statute to deduct from gross income any amount representing exhaustion of its leasehold, there is no warrant of law for deducting from the March 1, 1913, value the pro rata exhaustion of the value of the leasehold on that date in computing the amount of gain realized from the sale.

We are of the opinion that the cost, or in case of a leasehold acquired prior to March 1, 1913, the value on that date, is subject to exhaustion ratably over the period of the lease. We have so held in respect of tangible property. *Appeal of Even Realty Co.*, *supra*. We have found no difference between tangible property and leasehold interests in this regard. *Appeal of Grosvenor Atterbury*, 1 B. T. A. 169. We have held that exhaustion actually occurring must be taken into consideration in computing the value of an asset having a definite life, usually spread ratably over such life, whether or not there is an actual decline in value year by year. *Appeal of Union Metal Mfg. Co.*, 1 B. T. A. 395.

> *Order of redetermination will be entered on 15 days' notice, under Rule 50.*

ARUNDELL not participating.

MURDOCK and STERNHAGEN dissent.